UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.P.,[1]<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, Warden, California City Detention Facility; SERGIO ALBARRAN, Acting Field Office Director, U.S. Immigration and Customs Enforcement San Francisco; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement, U.S. Department of Homeland Security; and, KRISTI NOEM, Secretary, U.S. Department of Homeland Security,<br><br>Respondents. | Case No.: 1:25-cv-01538-JLT-SKO (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS<br><br>[21-DAY OBJECTION DEADLINE] |

Petitioner M.P. is an asylum-seeker from Colombia proceeding with counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. After entry to the United States in November 2021, he was detained by immigration officials but then released pending his removal proceedings after officials determined that he was neither a danger nor a flight risk. Since then, he has resided in

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his initials, to protect sensitive personal information. See Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

the San Francisco Bay Area, maintained a clean criminal record, and dutifully complied with all conditions of release. On June 23, 2025, Immigration and Customs Enforcement ("ICE") agents re-detained Petitioner when he appeared for a credible fear interview.

On November 10, 2025, Petitioner filed a petition for writ of habeas corpus seeking immediate release and an injunction prohibiting the Government from re-detaining him unless it first provides him with a hearing before a neutral adjudicator. (Doc. 1 at 16.) On December 19, 2025, Respondents filed an opposition to the petition. (Doc. 7.) On December 24, 2025, Petitioner filed a reply. (Doc. 8.)

For the reasons explained below, the Court will recommend the petition be GRANTED.

I.  **BACKGROUND**

Petitioner fled Colombia to pursue asylum in the United States. (Doc. 1 at ¶ 24.) On November 18, 2021, he entered the United States and was apprehended by Department of Homeland Security ("DHS"). (Doc. 1 at ¶ 26.) Petitioner was initially issued a notice and order of expedited removal pursuant to 8 U.S.C. § 1225(b)(1), but he informed immigration officials that he had a fear of being killed if he returned to Colombia. (Doc. 1 at ¶ 27.) On November 29, 2021, DHS issued a Form-I-220A and released M.P. on his own recognizance pursuant to 8 U.S.C. § 1226 after determining he was not a flight risk or danger to the community. (Doc. 1-2 at 1.)

The regulations that authorize immigration authorities to release a noncitizen on her own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the Government that the noncitizen is not a danger to the community or a flight risk." Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom.* Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018).

Petitioner settled in the San Francisco Bay Area. He established ties with the community and attended Christian church and Bible study in Redwood City, California. (Doc. 1 at ¶ 29.) In April 2025, Petitioner met his girlfriend and then her family. (Doc. 1 at ¶ 30.) They continue to support him through his current detention. (Doc. 1 at ¶ 30.)

From May 30, 2024, to June 23, 2025, Petitioner routinely presented for check-ins at the San Francisco ICE office. (Doc. 1 at ¶¶ 31-37.) DHS consistently determined that Petitioner was in compliance with the terms of his 2021 release. (*Id.*)

On October 18, 2024, Petitioner affirmatively applied for asylum. (Doc. 1 at ¶ 32.) United States Citizenship and Immigration Services (USCIS) conducted a credible fear interview. (Doc. 1 at ¶ 36.) On June 23, 2025, USCIS reached a negative credible fear determination. (Doc. 1 at ¶ 37.) DHS then revoked Petitioner's Order of Release on Recognizance and detained him. (Doc. 1 at ¶ 37.)

On July 11, 2025, an immigration judge vacated DHS's negative credible fear determination, finding eligibility for asylum, withholding of removal, and relief under the Convention Against Torture. (Doc. 1 at ¶ 39.) On July 29, 2025, he was placed in "regular" removal proceedings and charged with being present in the U.S. without admission pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). (Doc. 1 at ¶ 40.)

On August 11, 2025, an immigration judge denied Petitioner's bond request finding she did not have jurisdiction over his request. (Doc. 1 at ¶ 42.) At a subsequent hearing on October 8, 2025, another immigration judge agreed with the prior determination that bond release was unavailable, citing Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025). Petitioner remains detained at California City Detention Facility in Kern County, California. (Doc. 1 at ¶ 45.)

## II.  JURISDICTION AND LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A district court may grant a writ of habeas corpus when the Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)).

/////

/////

### III.   DISCUSSION

Civil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas v. Davis, 533 U.S. 678, 690 (2001); Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Petitioner contends that the Due Process Clause bars the Government from re-detaining him without first providing a hearing where it must prove he is a flight risk or danger.  (Doc. 1 at 16.)  In their response to the petition, Respondents do not contend that the Government made an evidence-based determination that Petitioner was a danger, or a flight risk, or that he had violated his conditions of release.  Nor do they allege that Petitioner had committed a crime or that they had otherwise made a determination that Petitioner was dangerous.  Rather, Respondent's contend that Petitioner's detention is governed by 8 U.S.C. § 1225(b)(1)(B)(iii). Respondents argue that pursuant to 8 U.S.C. § 1225(b)(1)(B)(iii), Petitioner must be detained pending his application for asylum.  Accordingly, before turning to the standard due process analysis, the Court will address the threshold matter of whether Petitioner's re-detention is properly understood to be authorized by section 1225(b)(1)(B)(iii) as Respondents contend or under section 1226(a) as Petitioner contends.

The Court does not find § 1225(b)(1)(B)(iii) applicable to Petitioner's case. Under § 1225, a noncitizen "who has not been admitted or who arrives in the United States" is considered "an applicant for admission." 8 U.S.C. § 1225(a)(1). For certain applicants for admission, 8 U.S.C. § 1225 authorizes "expedited removal." § 1225(b)(1). § 1225(b)(1) provides that:

> If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) [8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7)], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 [8 USCS § 1158] or a fear of persecution.

Under § 1225(b)(1), two groups of noncitizens are subject to expedited removal. First, there are "arriving" noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. The implementing agency regulations define "arriving alien" as applicants for admission "coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. The second group –designated noncitizens –includes noncitizens who meet all of the following criteria: (1) they

4

are inadmissible due to lack of a valid entry document or misrepresentation; (2) they have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) they are among those whom the Secretary of Homeland Security has designated for expedited removal. *Thuraissigiam*, 591 U.S. at 109, 140 S.Ct. 1959; § 1225(b)(1).

Neither provision is applicable to Petitioner. Petitioner is not an "arriving" noncitizen. When Petitioner entered the United States four years ago, he was apprehended, detained, and then released under his own recognizance under § 1226(a). He was not placed in expedited removal proceedings under § 1225(b)(1). Respondents' new interpretation that § 1225(b) is applicable to aliens who are already in the country and have been for many years has been universally rejected by district courts throughout the country, including this Court. Valencia v. Chestnut, 2025 WL 3205133, at *2 (E.D. Cal. Nov. 17, 2025) (noting that "[h]ere in the Eastern District of California, recent decisions have largely rejected the government's interpretation of Section 1225(b)(2) as applicable to all 'applicants for admission,'" recognizing "[o]ther district courts have also reached the result that Section 1226(a), not Section 1225(b)(2), provides the appropriate framework for noncitizens already residing in the United States," and collecting cases).

The record shows that the Government treated Petitioner as subject to 8 U.S.C. § 1226(a), which does not mandate detention, after it released him in 2021. Petitioner was released on his own recognizance, which means that he was released pursuant to § 1226(a). See Ortega-Cervantes v. Gonzales, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)."). Additionally, in the Order of Release on Recognizance, ICE issued the order "in accordance with section 236" of the INA (which is codified at § 1226). (Doc. 1-2 at 1.) Respondents' attempt to then switch course once Petitioner is re-detained and say that § 1225(b) is the appropriate detention authority is thus contradicted by their own statements, arguments, and exhibits in the record.

Therefore, consistent with the overwhelming consensus rejecting Respondents' interpretation of section 1225(b), this Court concludes that section 1226(a), not section 1225(b), authorizes and dictates Respondents' authority to re-detain Petitioner.

The Court next turns to the analysis of Petitioner's due process claim. Due process claims are analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

### A. Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147–49 (1997). Even when a statute allows the Government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [Government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481–84.

Immigration officials' November 2021 release of Petitioner on his own recognizance pending his immigration proceedings was similar, in that it allowed him to live in the country subject to

supervision, but outside of custody, for the past 4 years. And that time inherently allowed Petitioner to form "enduring attachments of normal life," including allowing him to live in the United States, developing ties to the community, becoming an active member of his community, and becoming gainfully employed. Id. at 482. The Court concludes that Petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest.

Because the Court concludes that Petitioner has a protected liberty interest in his release, see Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); Ortega v. Kaiser, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest), the Court must next determine what process is due before the Government may terminate Petitioner's liberty.

## B. The Mathews Factors Demonstrate Petitioner is Entitled to a Pre-Deprivation Hearing

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be evaluated using the Mathews v. Eldridge factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)); see Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).

Turning to the first factor, Petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from Government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for the past 4 years, and during

7

that time, he has developed ties to the community, formed relationships, and worked. His detention denies him that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the Petitioner] has not received any bond or custody redetermination hearing." A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla, 704 F. Supp. 3d at 1172. Petitioner has no criminal history. In addition, there is no evidence that Petitioner is a flight risk insofar as Petitioner has faithfully reported according to the conditions of his release for the previous four years as required. No neutral arbiter has determined whether the facts show that Petitioner is a flight risk or danger to the community. Given the absence of any procedural safeguards to determine if his detention was justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." A.E., 2025 WL 1424382, at *5.

Third, although the Government has a strong interest in enforcing the immigration laws, the Government's interest in re-detaining Petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe v. Becerra, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. Doe, 2025 WL 691664, at *6. "If the Government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." Ortega, 415 F. Supp. 3d at 970.

On balance, the Mathews factors show that *before* Respondents could lawfully re-detain Petitioner, he was entitled to a bond hearing. "'[T]he root requirement' of the Due Process Clause" is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)); see Zinermon, 494 U.S. at 127 ("[a]pplying [the Mathews] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty"). And consistent with the numerous decisions of other courts in this circuit who have ruled on this issue, at such a hearing the burden would be on the Government to

prove that Petitioner is a flight risk or danger to the community by clear and convincing evidence. See, e.g., Ramirez Clavijo v. Kaiser, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025) (reaching the same conclusion); Garcia, 2025 WL 1927596, at *5 (same); Pinchi v. Noem, No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025) (same); Ortega, 415 F. Supp. 3d at 970 (same); Doe, 2025 WL 691664, at *6 (same); Diaz v. Kaiser, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025) (same); Romero v. Kaiser, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022) (same); Vargas v. Jennings, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (same). Accordingly, Petitioner's detention is in violation of the Due Process Clause of the Fifth Amendment.

## IV.     CONCLUSION & RECOMMENDATION

The Court therefore concludes that Respondents violated Petitioner's due process rights when they re-detained Petitioner without first having conducted a pre-deprivation hearing before a neutral arbiter wherein the Government established that Petitioner was a flight risk or danger to the community such that his physical custody was legally justified. For the foregoing reasons, the Court hereby RECOMMENDS that the petition be GRANTED, Petitioner be released from detention, and Respondents be enjoined from re-detaining Petitioner unless his re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that Petitioner presents a flight risk or danger to the community.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty-one (21) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page

limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **January 30, 2026**                         /s/ *Sheila K. Oberto*                     
                                                                              UNITED STATES MAGISTRATE JUDGE